# Exhibit 1

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into by and between Melissa Wychesit ("Named Plaintiff"), individually and on behalf of the putative collective of non-exempt branch employees that she seeks to represent ("Putative Collective Members," as set forth more fully below) (collectively with Named Plaintiff, "Plaintiffs"), and Byline Bank ("Defendant" or "Byline") (together with Plaintiffs, the "Parties").

## RECITALS

**WHEREAS**, on September 6, 2022, counsel for Named Plaintiff informed Byline of Named Plaintiff's interest in resolving claims for unpaid wages under the Fair Labor Standards Act ("FLSA") and analogous state laws, on behalf of herself and all others similarly situated;

**WHEREAS**, thereafter the Parties agreed to engage in discussions regarding the possibility of a resolution of these claims through a mediation process and agreed to toll the limitations period on those claims;

**WHEREAS**, following an exchange of data and documents, through a mediation session conducted remotely before experienced mediator Michael Russell, Esq. on February 28, 2023, Named Plaintiff and Byline reached a pre-litigation accord resulting in this Agreement;

**WHEREAS**, Byline denies all liability to Plaintiffs;

**WHEREAS**, the purpose of this Agreement is to settle fully and finally the unpaid wage claims raised by Named Plaintiff, for both herself and all other Plaintiffs; and

**WHEREAS**, Plaintiff's Counsel analyzed and evaluated the merits of Named Plaintiff's and Putative Collective Members' claims; obtained and reviewed documents relating to Byline's compensation and timekeeping policies and practices; and analyzed payroll and workweek data; and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of litigation, including the possibility that the claims, if not settled now, might not result in any recovery or might result in a recovery less favorable, and that in the event of a recovery it would not occur for several years, Plaintiff's Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate, and that this Agreement is in the best interests of Plaintiffs;

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the claims on the following terms and conditions:

## 1.    DEFINITIONS

The following terms, as used in this Agreement, are defined as follows:

1.1    "Action" means the civil action to be filed in the United States District Court for the Northern District of Illinois, Eastern Division.

1.2    "Approval Order" means an order to be approved and entered by the Court, which approves the terms of this Agreement and Settlement, in a form substantially similar to the Proposed Order Approving Collective Action Settlement, attached hereto as Exhibit A.

1.3    "Complaint" means the collective action complaint filed to initiate the Action.

1.4    "Collective Period" means the period between September 19, 2019 and February 28, 2023.

1.5    "Defendant's Counsel" means Laner Muchin, Ltd.

1.6    "Effective Date" means the first date the Court's approval of the settlement is no longer appealable, which shall be 31 days, or if an appeal is filed, the date on which such appeal is finally resolved.

1.7    "Eligible Workweek" means each calendar week worked by a Putative Collective Member during the Collective Period.

1.8    "Employer Payroll Taxes" means all taxes and withholdings an employer is required to make pursuant to federal, state, and/or local law arising out of or based upon the payment of employment/wage compensation in this Action, including but not limited to FICA, FUTA, and SUTA obligations.

1.9    "Funding Date" means seven (7) days after the Effective Date.

1.10    "General Release Payment" means the payment the Court approves to be paid to Named Plaintiff of up to Ten Thousand Dollars ($10,000.00) in recognition for her service as named plaintiff and in exchange for a general release to Defendant.

1.11    "Gross Fund" means Nine Hundred Seventy-Five Thousand Dollars ($975,000.00), which is the amount that Defendant has agreed to pay to fully and finally resolve and settle all local, state, and federal wage and hour claims of Plaintiff and the Putative Collective Members, including any claim for attorneys' fees and costs approved by the Court, any and all amounts to be paid to Participating Collective Members, the Settlement Administrator costs, and any Court-approved General Release Payment.  The Gross Fund does not include Employer Payroll Taxes, which Defendant shall pay separately from the Gross Fund.

**1.12** "Last Known Contact Information" means the most recently recorded personal mailing address, personal email address, and personal telephone number for a Putative Collective Member as shown in Defendant's records.

**1.13** "Net Fund" means the remainder of the Gross Fund after deductions, payments, and allocations for: (i) any Court-approved attorneys' fees and costs for Plaintiff's Counsel, (ii) any Court-approved General Release Payment, and (iii) the Settlement Administrator costs.

**1.14** "Opt-In Period" shall mean the later of: (i) the one hundred and twenty (120)-day period beginning on the date of the initial mailing of the Notice and Settlement Check by the Settlement Administrator to Putative Collective Members; (ii) forty-five (45) days from the Settlement Administrator's re-mailing of a Notice and Settlement Check that was returned as undeliverable by U.S. Mail, or of a new Settlement Check that was reissued because the Putative Collective Member reported the original Settlement Check was lost or not received and the Settlement Administrator cancelled the original Settlement Check, provided that reissuances will occur no later than 120 days before December 31 of the year following the year that the Approval Order is entered ("Re-Mailing Opt-in Period").

**1.15** "Participating Collective Members" means each Putative Collective Member who opts in to the settlement by cashing and/or otherwise negotiating their Settlement Check within the deadline set forth by the Parties and/or the Court. Named Plaintiff shall be considered a Participating Collective Member regardless of whether she negotiates a Settlement Check.

**1.16** "Plaintiff's Counsel" means Outten & Golden LLP and Shavitz Law Group, PA.

**1.17** "Putative Collective Member" means all non-exempt branch employees, however variously titled, including Assistant Branch Managers, Personal Bankers, Universal Bankers, Senior Universal Bankers, Floating Universal Bankers, Tellers, Senior Tellers, Floating Tellers, and Teller Supervisors (collectively, "Branch Employees") employed by Defendant at some point during the Collective Period.

**1.18** "Released Claims" means the claims detailed in Section 6 of this Agreement.

**1.19** "Releasees" means Defendant and its officers, directors, employees, agents, insurers, successors, predecessors, affiliates, parents, subsidiaries, members, Board of Directors members, shareholders, attorneys, and other related entities.

**1.20** "Reminder Notice" means the document entitled "Important Reminder Regarding Byline Settlement," to be approved by the Court in a form substantially similar to Exhibit C.

**1.21** "Settlement" means the settlement between the Parties which is embodied and contained in this Agreement.

**1.22** "Settlement Administrator" means the third-party settlement administrator selected by Plaintiff's Counsel to administer this settlement, subject to the approval of Defendant's Counsel.

**1.23** "Settlement Check" means the check issued to each Participating Collective Member for their proportionate share of the Net Fund calculated in accordance with this Agreement.

**1.24** "Settlement Notice" or "Notice" means the document entitled Notice of Settlement, to be approved by the Court in a form substantially similar to the notice attached hereto as Exhibit B. This Settlement Notice is separate from any communication which Defendant may choose to issue to Putative Collective Members who are current employees about the Settlement and timekeeping practices, which Plaintiff's Counsel will be entitled to review before dissemination if issued.

**2. BINDING AGREEMENT**

**2.1** This Agreement is a binding agreement and contains all material terms.

**3. APPLICATION FOR SETTLEMENT APPROVAL**

**3.1** Plaintiff's Counsel shall submit the Complaint and settlement approval papers to the United States District Court for the Northern District of Illinois, Eastern Division on or before April 29, 2023. Among other things, the approval motion will ask the Court to: (i) enter the Approval Order approving the Settlement as fair, adequate, and reasonable, (ii) approve the proposed Settlement Notice to be sent to Putative Collective Members, (iii) incorporate the terms of this Settlement, and (iv) enter an Order dismissing the case without prejudice, with leave to reinstate on or before 180 days after the first Settlement Notices are sent pursuant to the terms of the Settlement and in the event a motion to reinstate is not filed on or before 180 days after the first Settlement Notices are sent, the case shall be deemed, without further order of the Court, to be dismissed with prejudice.

**3.2** Effect of Court's Failure to Approve Settlement. If the Court fails to approve this Agreement, the Parties (a) will attempt to renegotiate the Settlement for the purpose of obtaining Court approval of a renegotiated settlement and agreement, and/or (b) seek reconsideration or appellate review of the decision denying approval of the Agreement. In the event reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement modification is not approved, and the Parties decide to forego further negotiation of a settlement, the Parties will be in the same positions as if settlement approval had not been attempted.

**4.** **SETTLEMENT ADMINISTRATION AND NOTICE TO PUTATIVE COLLECTIVE MEMBERS**

4.1 Duties of the Settlement Administrator. The Settlement Administrator will be responsible for establishing a Qualified Settlement Fund ("QSF") account; updating Putative Collective Members' last known mailing address through the National Change of Address program certified by the United States Postal Service before sending the Notice; preparing, printing, and disseminating the Settlement Notice to Putative Collective Members by email and First Class U.S. Mail, with the mailed Settlement Notice disseminated together with Settlement Checks; performing up to two skip-traces to locate a new mailing if a Settlement Notice and Settlement Check is returned as undeliverable and re-mailing the Settlement Notice and Settlement Check promptly; issuing a new Settlement Check and/or Notice to any Putative Collective Member who reports losing or not receiving the original Settlement Check and/or Notice and cancelling the original Settlement Check; maintaining an email address which Putative Collective Members can use to make inquiries and provide address updates; making commercially reasonable searches for new contact information for Putative Collective Members whose Settlement Notices are returned as undeliverable with no forwarding address; making diligent efforts in locating all Putative Collective Members, including calling Putative Collective Members, if necessary, and notifying Defendant's counsel so Defendant can assist the Settlement Administrator and Plaintiff's Counsel in locating Putative Collective Members; preparing, printing, and disseminating the Reminder Notices to Putative Collective Members by email and First Class U.S. Mail; determining the amount of payments allocated to each Putative Collective Member in accordance with this Agreement, along with the amount of all payroll taxes to be paid and deductions to be withheld; determining the amount of workweeks attributable to the Putative Collective Members; providing the Parties with a sortable spreadsheet of all Participating Collective Members, except that any updated contact information located by the Settlement Administrator or provided by a Participating Collective Member that differs from the Last Known Contact Information shall be redacted on the version sent to Defendant's Counsel; preparing and mailing Settlement Checks; distributing any approved General Release Payment and attorneys' fees and expenses; calculating and paying all appropriate taxes and complying with all applicable tax reporting obligations, including preparing and filing all applicable tax forms; determining the tax characterization of any General Release Payment; referring to Plaintiff's Counsel all inquiries by Putative Collective Members regarding matters not within the Settlement Administrator's duties specified herein; retaining and providing a copy of Settlement Checks endorsed by the Participating Collective Members to Plaintiff's and Defendant's Counsel; timely responding to communications from the Parties and their counsel; reporting on the status of the settlement to the Parties on a weekly basis; and such other tasks as set forth herein, or as the Parties mutually agree, or as otherwise determined by the Settlement Administrator as necessary in effectuating its notice duties.

**4.2** The Parties will have equal access to the Settlement Administrator and all information related to the administration of the Settlement, except that Defendant's Counsel is not entitled to updated contact information located by the Settlement Administrator for Putative Collective Members or provided by Putative Collective Members. Defendant's Counsel is entitled to communications between the Settlement Administrator and Putative Collective Members, except that Plaintiff's Counsel shall conduct a privilege review of any such communication prior to Defendant's Counsel receiving a copy and shall be entitled to redact any portion of such communication that it determines is subject to attorney-client privilege.

**4.3** The Settlement Administrator will provide weekly reports to counsel for the Parties regarding the status of the mailing of the Notice, the number of Putative Collective Members who have negotiated their Settlement Checks, the number of Notices that have been returned as undeliverable, and the current deadline for negotiating Settlement Checks. Prior to mailing any of the settlement documents, including the Settlement Notice and Reminder Notice, to Putative Collective Members, the Settlement Administrator shall provide final formatted versions of these documents for approval by both Parties.

**4.4** Defendant agrees to cooperate with the Settlement Administrator and provide accurate information to the extent reasonably available and necessary to calculate the Settlement Amounts and locate Putative Collective Members.

**4.5** Within seven (7) days of the Effective Date, Defendant will give the Settlement Administrator and Plaintiff's Counsel a list, in electronic form, of the names, Last Known Contact Information, Social Security Numbers, and the dates of employment as a Branch Employee of each Putative Collective Member during the Collective Period ("Collective List"). Within seven (7) days after the Settlement Administrator receives the list from Defendant, the Settlement Administrator will calculate and report to Counsel the number of Eligible Workweeks so that the Parties have equal information regarding the potential trigger of Section 5.1(ii).

**4.6** Settlement Notices will be sent to Putative Collective Members via email and First Class U.S. Mail by the Settlement Administrator within twenty-one (21) days of the Funding Date. The mailed Settlement Notice will be accompanied by Settlement Checks in the amount based on each Putative Collective Member's pro rata settlement share. The Settlement Notices will advise the Putative Collective Member of the claims raised and that the Parties have agreed to a settlement.

4.7 Any Notice or Settlement Check returned as undeliverable shall be skip-traced up to two times to obtain a new address and be re-mailed by First Class U.S. Mail. The Settlement Administrator shall take all reasonable steps to obtain the correct address for any Putative Collective Member for whom the Notice or Settlement Check is returned by the post office or by email as undeliverable, including using Social Security numbers to obtain better address information. The Settlement Administrator shall notify counsel for Defendant of all Notices returned as undeliverable so that Defendant can double-check its records.

4.8 The Settlement Administrator will also send a Reminder Notice (Exhibit C) via email and First-Class U.S. Mail sixty (60) days after the initial mailing of the Notice to any Putative Collective Member who, at the time of mailing the Reminder Notice, has not negotiated a Settlement Check. The format of the Reminder Notice shall be approved by both Parties prior to mailing.

4.9 The proceeds of the Net Fund shall be disbursed (pursuant to Section 5.4 below) to Putative Collective Members. Putative Collective Members must opt in (pursuant to Section 1.15) within the Opt-In Period, as defined in Section 1.14. Any checks that remain uncashed after the Opt-In Period shall be void and the associated monies shall revert to Defendant, except as required to fund the resolution of Putative Collective Members' disputes described in Section 5.4(ii). Putative Collective Members who do not timely opt in are not Participating Collective Members (unless otherwise agreed to in writing by the Parties or approved by the Court) and do not release their claims against the Releasees as described in Section 6.1 below but do waive their right to receive a payment associated with the Settlement.

## 5. SETTLEMENT TERMS

## 5.1 SETTLEMENT PAYMENTS

  i. Defendant agrees to pay a maximum of Nine Hundred Seventy-Five Thousand Dollars ($975,000.00), which shall fully resolve and satisfy any and all amounts to be paid to Participating Collective Members, any Court-approved General Release Payment as more fully set forth herein, the Settlement Administrator's fees and costs, and any claim for Plaintiff's Counsel's fees and costs. This amount does not include the Employer Payroll Taxes, which Defendant will pay separately from the Gross Fund.

  ii. This Settlement covers and includes no more than 44,925 Eligible Workweeks for approximately 454 Putative Collective Members identified by Byline in the mediation data. Should the total number of workweeks or Putative Collective Members reported to the Settlement Administrator on or before one (1) week before the date on which Settlement Checks are issued to Putative Collective Members (per Section 5.1(iv)(b)) increase by more than 4%, Defendant has the option to deem any such individual Putative Collective Member to be excluded from the settlement (and thereby not subject to the release in Section 6.1), or alternatively, fund an

increase to the Gross Fund by a proportionate additional amount for each additional workweek or Putative Collective Member above 4% to be paid into the Gross Fund. Should additional Eligible Workweeks or Putative Collective Members be identified within one week of the date on which Settlement Checks are issued to Putative Collective Members or after such Settlement Checks are issued (per Section 5.1(iv)(b)) (other than through the process in Section 5.4(ii)), Defendant has the option to deem any such individual Putative Collective Member to be excluded from the settlement (and thereby not subject to the release in Section 6.1), or alternatively, fund an increase to the Gross Fund by a proportionate additional amount for each additional workweek or Putative Collective Member unless the Parties agree that the additional amount shall be paid from the reversion. No Settlement Check may issue to an additional Putative Collective Member pursuant to this paragraph later than 120 days before December 31 of the year following the year that the Approval Order is entered.

iii. Within seven (7) days of the Effective Date, Defendant shall pay the Gross Fund by wire transfer into the QSF ("Funding Date").

iv. The Settlement Administrator will distribute the money in the QSF by making the following payments:

(a) Paying Plaintiff's Counsel's fees and costs, Settlement Administrator's fees and costs, and the Court-approved General Release Payment fourteen (14) days after the Effective Date.

(b) Issuing Settlement Checks to Putative Collective Members for their settlement amounts, as described in Section 5.4, within twenty-one (21) days of the Funding Date.

**5.2 SETTLEMENT AMOUNTS PAYABLE AS ATTORNEYS' FEES AND COSTS.**

i. In the approval motion, Plaintiff's Counsel shall ask the Court to approve payment of up to one-third of the Gross Fund as an award of attorneys' fees, in addition to an award of reasonable out-of-pocket costs and expenses. Defendant shall not oppose this application. The amount awarded by the Court as an award of attorneys' fees shall constitute full satisfaction of any claim for attorneys' fees or costs, and Named Plaintiff and Participating Collective Members agree that they shall not seek, nor be entitled to, any additional attorneys' fees or costs under any theory or from any source, incurred in relation to this case, other than fees and costs incurred in any effort to enforce the terms of this Agreement.

ii. The substance of Plaintiff's Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the Settlement and this Agreement. The outcome of any

8

proceeding related to Plaintiff's Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the approval motion.

**5.3    GENERAL RELEASE PAYMENT TO NAMED PLAINTIFF.**

i.      In the approval motion, the Named Plaintiff will apply to the Court to receive ten thousand dollars ($10,000) from the Gross Fund for the services she rendered to the Putative Collective Members and in exchange for providing a general release to Defendant. Defendant shall not oppose this application.

ii.     The General Release Payment and any requirements for obtaining any such payment are separate and apart from, and in addition to, Named Plaintiff's recovery from the Net Fund as a Putative Collective Member. The substance of Named Plaintiff's application for a General Release Payment is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the Settlement and this Agreement. The outcome of the Court's ruling on the application for a General Release Payment shall not terminate this Agreement or otherwise affect the Court's ruling on the approval motion. Any General Release Payment money not approved by the Court shall become part of the Net Fund.

iii.    The Named Plaintiff agrees to a general release of her claims in exchange for receiving and accepting her General Release Payment, as described in further detail in Section 6.2.

iv.     The Parties agree that they have come to no determination regarding the tax treatment of the General Release Payment. The Parties agree that the Settlement Administrator alone will have the discretion to determine the tax treatment of the General Release Payment.

**5.4    PAYMENTS TO PARTICIPATING COLLECTIVE MEMBERS.**

i.      Payments to Participating Collective Members will be made from the Net Fund and in accordance with Section 5.1(iv) above. The settlement amount for each Putative Collective Member will be determined by the Settlement Administrator pursuant to the following formula:

(a)     Each Putative Collective Member will receive two (2) points for each Eligible Workweek worked as a non-exempt classified Assistant Branch Manager during the Collective Period;

(b)     Each Putative Collective Member will receive one (1) point for each Eligible Workweek worked in a Branch Employee role other than Assistant Branch Manager during the Collective Period;

9

(c)     To calculate each Putative Collective Member's proportionate settlement amount:

      1.     Add all points for all Putative Collective Members together to obtain the "Denominator";

      2.     For each Putative Collective Member, divide their number of points by the Denominator to obtain their "Portion of the Net Fund";

      3.     Multiply each Putative Collective Member's Portion of the Net Fund by the Net Fund to determine each Putative Collective Member's settlement amount.

ii.     There is a rebuttable presumption that Byline's personnel and payroll records are correct, but Putative Collective Members may, should they disagree with Byline's records, provide documentation to show contrary employment dates and/or records of weeks worked in the Branch Employee role no later than the end of the Opt-In Period. Such a dispute shall be directed to the Settlement Administrator, who will promptly notify all Counsel of the individual's dispute and provide Counsel with a copy of the records provided by Byline and the individual and any other pertinent and available records. The Settlement Administrator shall independently resolve disputes arising under this Paragraph and relating to a Putative Collective Member's work tenure and relevant work weeks and inform all Counsel of the determination of any such disputes. The Settlement Administrator's determination will be final and binding. In the event that a Putative Collective Member successfully disputes their allotted weeks, any additional Eligible Workweeks as determined by the Settlement Administrator shall be paid from the reversion (subject to the requirements of Section 5.1(ii)), using the value per workweek allocated in the original Net Fund; or, if the reversion is insufficient to cover the amount owed for additional Eligible Workweeks, Defendant will pay an additional amount into the Gross Fund to cover the additional weeks, or Defendant has the right to deem any such individual Putative Collective Member's additional workweeks to be excluded from the settlement (and thereby not subject to the release in Section 6.1).

iii.     The Settlement Administrator shall mail to all Putative Collective Members their Settlement Checks, less proper tax withholdings, as required by Section 5.4(v) of this Agreement.

iv.    Putative Collective Members shall opt in (pursuant to Section 1.15) within the Opt-In Period, as defined in Section 1.14. Sixty (60) days following the initial mailing of the Settlement Notice, the Settlement Administrator shall mail and email a Reminder Notice to any Putative Collective Member who has not negotiated their Settlement Check reminding the Putative Collective Member of the date by which they must negotiate the check prior to it becoming void. All amounts remaining in the QSF after the expiration of the Opt-In Period shall revert to Defendant, except as required to fund the resolution of Putative Collective Members' disputes described in Section 5.4(ii).

v.    Defendant's Payroll Tax Responsibility and Tax Characterization of Payments.

(a)    Fifty percent (50%) of each payment made to Participating Collective Members from the Net Fund shall be treated as wages and fifty percent (50%) of such payment shall be treated as interest, any applicable penalties, liquidated damages, and other non-wage relief.

(b)    Payments treated as back wages shall be made net of all applicable employee-side employment tax withholdings and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and Social Security number on an IRS Form W-2.

(c)    The Settlement Administrator shall be responsible for determining the appropriate number of exemptions to be used in calculating payroll tax and withholding, deciding the appropriate tax rate, issuing the Settlement Checks and General Release Payment and issuing IRS Forms W-2 and Form 1099. Payments of attorneys' fees and costs pursuant to Section 5.2 shall be made without withholding and shall be reported to the IRS and to Plaintiff's Counsel on an IRS Form 1099.

(d)    The employee portion of all applicable income and payroll taxes will be the sole responsibility of the individual Participating Collective Member receiving a Settlement Check or General Release Payment. The Parties make no representations, and it is understood and agreed that the Parties have made no representations, as to the taxability of any portions of the settlement payments to any Participating Collective Members or any payments to the Named Plaintiff. The Settlement Notice will advise Putative Collective Members to seek their own tax advice prior to acting in response to that Settlement Notice. Neither Plaintiff's Counsel nor Defendant's Counsel intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, nor will it be relied upon as such.

11

**6.      RELEASE OF CLAIMS**

**6.1**      Release by Participating Collective Members.  Conditioned upon the Court's entry of the Approval Order, and in exchange for the monetary consideration recited in this Agreement, each Participating Collective Member shall opt in by executing a "back of the check" release containing a written release that releases and discharges Releasees from the Released Claims. Accordingly, all settlement checks shall contain, on the back of the check, the following limited endorsement.

> RELEASE OF CLAIMS:
>
> By cashing and/or negotiating this check, I consent to participate in the settlement of *Melissa Wychesit v. Byline Bank*, No. _____, pending in the United States District Court for the Northern District of Illinois, and agree to be bound by the Settlement Agreement negotiated by Plaintiff's Counsel in that case.
>
> I waive, release, and forever discharge Byline and the Releasees of any and all wage and hour claims accruing on or before April 29, 2023 that accrued during my employment as a non-exempt classified Branch Employee, including, without limitation, all federal, state, and local claims for unpaid wages or overtime wages, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses.

**6.2**      Release by Named Plaintiff.  Named Plaintiff is covered by the release of claims identified in Section 6.1. Additionally, in the event Named Plaintiff receives and accepts a General Release Payment, she will additionally waive, release, and discharge Defendant and the other Releasees from all demands, claims, and actions, whether known or unknown and whether asserted or unasserted, relating to her employment or the termination of her employment with Defendant, including but not limited to claims under the Americans with Disabilities Act, Fair Labor Standards Act (including but not limited to claims for overtime compensation), Equal Pay Act, Title VII of the Civil Rights Act of 1964, Civil Rights Acts of 1866, 1871 and 1991, Section 1981, Family and Medical Leave Act, Age Discrimination in Employment Act, the Employee Retirement Income Security Act of 1974, the Illinois Biometric Information Privacy Act, the Worker Adjustment and Retraining Notification Act, the Illinois Human Rights Act, the Illinois Equal Pay Act, the Chicago Human Rights Ordinance, and the Cook County Human Rights Ordinance, and any tort claims or claims arising from any other federal, state, or local statute, regulation, and order, and in common law, through the date she signs this Agreement; provided, however, that the Named Plaintiff does not waive the right to file a charge or complaint with any administrative agency, but does waive any right to recover or receive any damages or other personal relief based on any demand, claim, or action waived in this Paragraph brought on her own behalf or by any third party, including as a member of any collective or class action.  Named Plaintiff does not release any claim or right that cannot be released as a matter of law.

**6.3**      Covenant Not to Sue by Named Plaintiff.  Named Plaintiff promises and covenants that she will not file any lawsuit, join, opt into or otherwise be a class member in any lawsuit or claim, against Byline and the other Releasees based upon any claim covered under the

12

foregoing releases, except that Plaintiff is not prohibited from filing a lawsuit to enforce this Agreement.

## 7. PARTIES' AUTHORITY

**7.1** The signatories hereto hereby represent that they are fully authorized to enter into this Agreement and to bind the Parties hereto to the terms and conditions hereof.

## 8. MUTUAL COOPERATION

**8.1** The Parties agree to reasonably cooperate with each other and to take all steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms and to effectuate the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Agreement. The Parties to this Agreement shall use their commercially reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by award of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein.

## 9. NO ADMISSION OF LIABILITY

**9.1** Defendant denies all of the allegations made by Named Plaintiff and denies that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted herein. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendant has agreed to settle these claims on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of litigation.

**9.2** The Parties stipulate and agree that, for settlement purposes only, the requisites for establishing collective action certification under the FLSA pursuant to 29 U.S.C. § 216(b) are met. Should this settlement not become final, such stipulation to conditional certification shall become null and void and shall have no bearing on, and shall not be admissible in connection with, the issue of whether or not conditional certification would be appropriate in a non-settlement context.

## 10. INTERPRETATION AND ENFORCEMENT/MISCELLANEOUS TERMS

**10.1** Inadmissibility of Settlement Agreement. Except for purposes of settling this Action, or enforcing its terms (including that claims were settled and released), resolving an alleged breach, or for resolution of other tax or legal issues arising from a payment under this Settlement Agreement, neither this Agreement, nor its terms, nor any document, statement, proceeding or conduct related to this Agreement, nor any reports or accounts thereof, shall be construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to the Parties, including, without limitation, evidence of a presumption, concession, indication or admission by any of the Parties of any liability, fault, wrongdoing, omission, concession or damage.

**10.2** Further Acts. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**10.3** No Assignment. Named Plaintiff represents and warrants that she has not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in her claims, or any related action, and any attempt to do so shall be of no force or effect.

**10.4** Entire Agreement. This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement except that the Parties' separate tolling agreement remains in full force and effect and is not merged with this Agreement.

**10.5** Binding Effect. This Agreement shall be binding upon the Parties and, with respect to Defendant, its affiliates, parents, subsidiaries, predecessors, successors, employees, and agents; and, with respect to Named Plaintiff, her spouse, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys, and assigns.

**10.6** Arms' Length Transaction; Materiality of Terms. The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**10.7** Captions. The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**10.8** Construction. The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**10.9** Governing Law. This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of Illinois, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**10.10** Continuing Jurisdiction. The Court shall retain jurisdiction over the interpretation and implementation of this Agreement.

**10.11** Waivers, etc. to Be in Writing. No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, with any required Court approval. Any failure by any party to insist upon the strict

performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**10.12**  Counterparts.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same original instrument.

**10.13**  Electronic Signatures.  Any party may execute this Agreement by signing by electronic means.

**10.14**  Signatories.  This Agreement is valid and binding if signed by Defendant's authorized representative and the Named Plaintiff.


**WE AGREE TO THESE TERMS.**


DATED:  _April 24, 2023_                    **BYLINE BANK**

By: _____


_____



DATED:  _____                    **MELISSA WYCHESIT**


_____

15

performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**10.12** Counterparts. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same original instrument.

**10.13** Electronic Signatures. Any party may execute this Agreement by signing by electronic means.

**10.14** Signatories. This Agreement is valid and binding if signed by Defendant's authorized representative and the Named Plaintiff.

**WE AGREE TO THESE TERMS.**

DATED: _____      **BYLINE BANK**

By: _____

_____

DATED: 04/24/2023 _____      **MELISSA WYCHESIT**

_____

15

# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MELISSA WYCHESIT, on behalf of herself and all others similarly situated,** | **Case No.** ▮▮▮▮▮▮▮ |
| **Plaintiff,** | **Honorable** ▮▮▮▮▮▮▮ |
| **v.** | |
| **BYLINE BANK,** | |
| **Defendant.** | |

## [PROPOSED] ORDER APPROVING SETTLEMENT, GENERAL RELEASE PAYMENT, AND ATTORNEYS' FEES AND COSTS

This matter comes before the Court on Plaintiff's Unopposed Motion for Approval of Settlement, General Release Payment, and Attorneys' Fees and Costs ("Motion"). Having considered Plaintiff's Motion and supporting Memorandum and exhibits, the Court hereby GRANTS Plaintiff's Motion and ORDERS as follows:

1. The Court finds that the Parties' Settlement in this Fair Labor Standards Act action is a fair, reasonable, and adequate resolution of a bona fide dispute. The Parties' Settlement is approved, and the terms of the Parties' Agreement are incorporated herein.

2. The Parties' agreed form of Settlement Notice, and the plan for its distribution, is approved.

3. The General Release Payment of $10,000 to Plaintiff Wychesit is approved.

4. Plaintiff's Counsel's request for attorneys' fees of one-third of the Gross Fund and reasonable out-of-pocket costs and expenses is granted.

5. This action is dismissed without prejudice, with leave to reinstate on or before 180 days after the first Settlement Notices are sent pursuant to the terms of the Settlement. In the

2

event a motion to reinstate is not filed on or before 180 days after the first Settlement Notices are

sent, the case shall be deemed, without further order of the Court, to be dismissed with prejudice.

Dated: _____

_____

Hon. ██████████████

United States District Court Judge

3

# Exhibit B

## <u>OFFICIAL COURT NOTICE OF SETTLEMENT</u>

[NAME]
[ADDRESS]
[CITY, STATE ZIP]

**You are receiving this notice because you worked as a non-exempt branch employee for Byline Bank and you are entitled to a payment from a lawsuit settlement.**

*A court authorized this notice. This is not a solicitation from a lawyer.*

A settlement check payable to you is enclosed. Please read this Notice before signing and cashing or depositing the check.

**Deadline:** The last day to cash the enclosed settlement check is **[INSERT DATE THAT IS THE LATER OF 120 DAYS FROM MAILING OR 45 DAYS FROM REMAILING]**. After that date, the enclosed check will be null and void, and you will no longer be eligible for a payment from the above-captioned action.

- The purpose of this Notice is to notify individuals who worked for Byline Bank as non-exempt branch employees between September 19, 2019 and February 28, 2023 of the settlement of overtime claims. You received this Notice because Byline's records indicate that you are eligible to receive a settlement payment.

- Under the allocation formula created by the settlement, you are being offered $**[INSERT AMOUNT]**, subject to applicable deductions and withholdings.

- A former employee (the "Named Plaintiff") filed a lawsuit alleging that Byline violated the law by failing to pay all overtime wages to non-exempt branch employees. Byline denies the allegations and the Court has not decided who is right.

**Your legal rights may be affected, and you have a choice to make now:**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SIGN AND CASH THE CHECK** | **Receive a settlement payment. Give up or "release" certain claims.**<br><br>By signing and cashing or depositing the enclosed settlement check on or before **[insert date that is the later of 120 days from mailing or 45 days from remailing]**, you are agreeing to participate in the case and settlement, and you are releasing the Released Claims discussed in Section 2 below. |
| **DO NOT SIGN OR CASH THE CHECK** | **You do not give up any rights; but you will not share the benefits.**<br><br>If you do not cash your settlement check by **[insert date that is the later of 120 days from mailing or 45 days from remailing]**, your check will be cancelled, you will not receive a settlement payment in this case, and you will not release any claims against Byline. Your claims may expire or continue to expire due to the statute of limitations. |

5

Your legal rights and options – **and the deadlines to exercise them** – are explained below.

**BASIC INFORMATION**

| **1. Why did I receive this notice and what is this case about?** |
|---|

The case is about whether Byline required non-exempt branch employees (including Assistant Branch Managers, Personal Bankers, Universal Bankers, Senior Universal Bankers, Floating Universal Bankers, Tellers, Senior Tellers, Floating Tellers, and Teller Supervisors) to perform work "off the clock" and failed to pay them proper overtime wages as a result. The Court has not made any ruling on the merits of the claims, and no party has prevailed. The parties have agreed to settle the claims to avoid the expenses and risks of litigation.

The case is *Wychesit v. Byline Bank*, Case No. _____, and is pending in the U.S. District Court for the Northern District of Illinois.

| **2. What are the terms of the settlement?** |
|---|

Byline has agreed to pay a single lump sum payment of $975,000.00 to be allocated (after the deductions for a payment to Plaintiff's Counsel for attorneys' fees and costs, payment to Plaintiff for a general release and her service to the collective of similarly situated employees, and the costs of administering the settlement) among non-exempt branch employees who worked during the period September 19, 2019 and February 28, 2023.

If you cash or deposit the enclosed check, you will join the case and settlement and be bound by its terms and conditions. In exchange for collecting this payment, you will release Byline (including its officers, directors, employees, agents, insurers, successors, predecessors, affiliates, parents, subsidiaries, members, Board of Directors members, shareholders, attorneys, and other related entities) from any and all wage and hour claims accruing on or before April 29, 2023 that accrued during your employment as a non-exempt classified Branch Employee, including, without limitation, all federal, state, and local claims for unpaid wages or overtime wages, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses.

| **3. How much is my payment and how was it calculated** |
|---|

Based on the allocation formula that has been approved by the Court, you are receiving a gross settlement payment of **$[AMOUNT]**. One half (50%) of the settlement payment will be treated as wages and will be subject to required withholdings and deductions. The remaining half (50%) will be treated as non-wage compensation and thus taxes will not be withheld.

The formula that has been approved by the Court and used to calculate your settlement payment considers the number of weeks you worked from September 19, 2019 and February 28, 2023 as a non-exempt Assistant Branch Manager and/or other non-exempt branch employee role. The Settlement Agreement contains the exact allocation formula. The Settlement Administrator used information from Byline's records to calculate your payment. If you have questions about your calculation or would like to obtain a copy of the Settlement Agreement, you may contact the Settlement Administrator or Plaintiff's counsel using the information in Section 4 or 7 below.

*Plaintiff's Counsel and Byline's Counsel do not make any representations concerning the tax consequences of this settlement or your participation in it, and you are advised to seek your own personal tax advice prior to acting in response to this Notice.*

| **4. How do I participate in this case and settlement?** |
| --- |

A check is enclosed.  All you have to do to participate in the case and settlement is sign, and cash or deposit the settlement check prior to **[insert date that is later of 120 days from mailing or 45 days from remailing]**.

By cashing or depositing the check, you consent and agree to be bound by the terms of the settlement and the release approved by the Court.  Finally, you also agree to designate Plaintiff's Counsel, Outten & Golden LLP and Shavitz Law Group, PA, to represent you in this case.

If you have questions about your settlement check, you may contact the Settlement Administrator at:

[Settlement Administrator contact info]

If you have other questions about the information in this Notice or your rights, you may contact Plaintiff's Counsel using the contact information listed in Section 7, below.

| **5. What happens if I do not want to participate in the case and settlement?** |
| --- |

If you do not want to participate in the case and settlement and receive a share of the settlement fund, then you should take no action and you should not sign, cash, or deposit the check.

| **6. Will I be retaliated against for participating in the settlement?** |
| --- |

Byline encourages you to participate in the settlement and will not retaliate against you based on your participation in this lawsuit or settlement.

| **7. Do I have a lawyer in this case?** |
| --- |

The Court has appointed Outten & Golden LLP and Shavitz Law Group, PA to represent you and all non-exempt branch employees who participate in the settlement.  You will not be charged for services provided by these lawyers.  Their fee will be deducted from the settlement as described above and you do not owe them any additional money for their services in this settlement.  The Plaintiff's lawyers' contact information is:

| | |
|---|---|
| Justin Swartz<br>Julio Sharp-Wasserman<br>**Outten & Golden LLP**<br>685 Third Avenue, 25th Floor<br>New York, New York 10017<br>(212) 245-1000<br>[insert]@outtengolden.com | Gregg I. Shavitz<br>Paolo C. Meireles<br>Tamra Givens<br>**Shavitz Law Group, PA**<br>951 Yamato Road, Suite 285<br>Boca Raton, FL 33431<br>(561) 447-8888<br>info@shavitzlaw.com |

Pooja Shethji
**Outten & Golden LLP**
1225 New York Avenue NW, Suite 1200B
Washington, D.C. 20005
(212) 847-4400
[insert]@outtengolden.com

---

**8. Can I get more information about the settlement?**

---

This Notice summarizes the settlement. More details are in the Settlement Agreement. To the extent there is any inconsistency between this Notice and the Settlement Agreement, the provisions in the Settlement Agreement control. You may obtain a copy of the Settlement Agreement by contacting the Settlement Administrator or Plaintiff's Counsel using the contact information above.

DATED: _____, 20__

8

# Exhibit C

**IMPORTANT REMINDER REGARDING**
**BYLINE OVERTIME SETTLEMENT**

Recently you should have received a Notice advising that you are eligible to participate in the settlement of a collective action for unpaid overtime against Byline Bank, with a settlement check enclosed.  Our records reflect that you have not cashed the check sent to you.

**IMPORTANT DEADLINE: in order to participate in the settlement, you must check your check on or before [INSERT DATE 120 DAYS FROM MAILING OR 45 DAYS FROM REMAILING FOR UNDELIVERABLES, WHICHEVER IS LATER]**. If you did not receive or no longer have the Notice and settlement check, you should contact the Settlement Administrator to request another check.

If you have any questions about the Notice, the case, or your legal rights, you should contact Outten & Golden LLP at **(212) 245-1000** or [insert]@outtengolden.com or Shavitz Law Group, PA at **(561) 447-8888** or info@shavitzlaw.com.

10